1
2
3
4
5
6
7
8
9
10
11
12
13
14

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN  DIVISION

15  CATHY WEDGE,                          ) CV 07-6200-SH
                                          )
16              Plaintiff,                ) MEMORANDUM DECISION
        v.                                ) AND ORDER
17                                        )
                                          )
18  MICHAEL ASTRUE,                       )
    Commissioner of Social Security       )
19                                        )
                    Defendant.            )
20  _____ )

21

22        This matter is before the Court for review of the decision by the

Commissioner of Social Security denying plaintiff's application for

23  Supplemental Security Income.  Pursuant to 28 U.S.C. § 636(c), the parties have

24  consented that the case may be handled by the undersigned.  This action arises

25  under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the

26  pleadings and transcript of the record before the Commissioner.  The parties have

27  filed a joint stipulation.  After reviewing the matter, the Court reverses the

28

1

decision of the Commissioner and remands to determine whether the plaintiff is eligible for the childhood disability benefits prior to age 21 under listing 112.05D.

## I.   PROCEDURAL BACKGROUND

Before plaintiff attained the age of 18, an application for Supplemental Security Income was protectively filed on behalf of plaintiff on November 16, 1999.  Plaintiff alleged both mental and physical impairments.  That claim was denied by the Commissioner, and again by an Administrative Law Judge ("ALJ") on June 19, 2002.  Plaintiff then sought review by the Appeals Council.  The Appeals Council denied review on November 7, 2003.  The parties then stipulated to a voluntary remand of the case for further proceedings.  Pursuant to the remand, the second ALJ found that plaintiff was not disabled under either the child or adult disability standards.  This action follows.

Plaintiff alleges the following errors in the ALJ's decision to deny benefits.  First, plaintiff alleges that the ALJ did not properly evaluate her disability under listings 12.05 C and 112.05 D.  Secondly, assuming *arguendo* that the ALJ properly evaluated plaintiff's claims under the listings, plaintiff alleges the ALJ erred in identifying alternative occupations for plaintiff that corresponded with her functional limitations.  Finally, plaintiff alleges that the ALJ failed to properly evaluate the opinion of the treating physician.  This Court agrees that the ALJ erred in evaluating plaintiff's disability under listing 12.05 C.

## II.  DISCUSSION

In determining whether a claimant is disabled, the ALJ must consider whether the claimant's impairments meet or equal a listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.  If a claimant shows that her impairments meet or equal a

listing, the claimant will be found presumptively disabled.  20 C.F.R. § 404.1526
(2008).  A claimant's impairments meet or equal a listing when they are
medically equal to those impairments in the listing.  *Id.*  The Commissioner finds
medical equivalence by comparing evidence and symptoms of the alleged
impairment with the medical criteria of the listed impairment.  *Id.*  The claimant
must have medical evidence to show that the impairment meets or equals a
listing.  *Id.*

Unlike other mental listings, 12.05 does not require the Commissioner to
assess the severity of the claimant's impairment according to the functional
limitations imposed by the impairment, including daily activities, social
functioning, and persistence, pace, and concentration.  20 C.F.R. Part 404,
Subpart P, Appendix 1.  According to listing 12.05, a claimant's impairment will
meet that listing if it satisfies any of the given criteria of the listing.  *Id.*  In the
case of listing 12.05 C, the criteria to support a disability finding require that a
claimant have a valid IQ of 60 to 70 inclusive, that the evidence demonstrates the
onset of the impairment before age 22, and that the claimant have an additional
significant physical or mental functional limitation.  *Id.*  The additional physical
or mental functional limitation requirement is met if the claimant is limited to
light work because of physical impairments.  *Fanning v. Bowen*, 827 F.2d 631,
633 (9th Cir. 1987)(holding that the functional limitation of 12.05 C was met if
the claimant was limited to light or sedentary work); *see also Mowery v. Heckler*,
771 F.2d 966, 973 (6th Cir. 1985).  The first prong of the listing, the IQ, is only
met when the ALJ determines that the test results are valid.  20 C.F.R. Part 404,
Subpart P, Appendix 1.

Although the Ninth Circuit has not yet decided what factors the ALJ may
use in determining the validity of a test result, other Circuits have allowed the
ALJ to use several factors in assessing the validity of test results.  *Clay v.*

*Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005)(holding that the ALJ is free to disregard a low IQ score where the evidence showed substantial malingering and daily activities inconsistent with the level of impairment alleged); *Soto v. Secretary*, 795 F.2d 219, 222 (1st Cir. 1986)(holding that the ALJ need not accept the IQ score if there is a substantial basis for believing that plaintiff is feigning results).  Some Circuits have discredited test results when there is evidence that a claimant's daily activities contradict the level of impairment indicated by a test result.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)(holding that a valid IQ is not conclusive when the score is inconsistent with other evidence in the record and claimant's daily activities).

Other Circuits have allowed an ALJ to discredit a test result when inconsistencies between tests indicated a high possibility of malingering.  *Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986).  For example, frequently when a claimant alleges a mental disorder, a psychologist administers the Minnesota Multiphasic Personality Inventory (MMPI) test.  *See Gallant v. Heckler*, 753 F.2d 1450, 1458 (9th Cir. 1984).  This test is used to measure personality traits as well as possible malingering; however it does not measure IQ.  *See id*; *Kearny v. Standard Ins. Co.*, 175 F.3d 1084, 1092 (9th Cir. 1999).  The MMPI is not related to the Wechsler Adult Intelligence Scale (WAIS) IQ test; the tests measure different qualities and make different assessments.  *See Gallant*, 753 F.2d at 1458; *Kearny*, 175 F.3d at 1092.  However, results on the MMPI that indicate a high degree of malingering have been used, in conjunction with other evidence, to discredit WAIS test scores that otherwise satisfy the requirements of a listing.  *Popp*, 779 F.2d at 1499-1500 (holding that an invalid MMPI score in conjunction with substantial evidence can discredit a qualifying IQ score).

1    Additionally, an ALJ may consider psychologists' opinions as substantial

2  evidence regarding claimant's impairments to the extent that they are supported

3  by objective evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

4  Generally, the ALJ accords greater weight to the opinion of a psychologist who

5  has examined the claimant over the opinion of one who has not. *Id.* Greater

6  weight is given to the examining psychologist because they have had the

7  opportunity to observe the patient and assess the patient's impairments. *Id.* The

8  opinion of a psychologist who has never examined the claimant is not usually

9  entitled to great weight. 20 C.F.R. § 404.1527(d) (2008). The ALJ may only

10  give greater weight to a non-examining psychologist's opinion when there is

11  significant evidence in the record which supports that opinion. *Morgan v.*

12  *Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1998).

13  Moreover, that ALJ may disregard any psychologist's opinion that is brief,

14  conclusory, and not supported by substantial evidence in the record. *Young v.*

15  *Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

16
17    In general, an ALJ's decision must be upheld when there is substantial

18  evidence to support that decision. *Magallanes*, 881 F.2d at 750. Substantial

19  evidence requires more than a scintilla of evidence, but does not require a

20  preponderance of evidence. *Id.* Although the ALJ has the authority to resolve

21  discrepancies, the ALJ's decision may only stand when there is enough evidence

22  such that a reasonable mind would reach the same conclusion. *Id.* When there is

23  insufficient evidence to support the ALJ's conclusion, the decision is reversed.

24  *Id.* Furthermore, when the record has been thoroughly developed and there is no

25  need for further administrative hearings, the Court may award benefits. *Vertigan*

26  *v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001). An award of benefits is

27  especially implicated when the claimant has undergone lengthy and burdensome

28

litigation. *Id*. When there are no further issues that necessitate further administrative hearings, an award of benefits is appropriate. *Id*.

Plaintiff contends that she is disabled because she meets the requirements of listing 12.05 C. Plaintiff took the WAIS test and scored a performance IQ of 70, which satisfies the first prong of the listing requirement. (Administrative Record "AR" at 785). Plaintiff met the age requirement of the listing because the IQ tests were performed when plaintiff was 21 years old. (AR at 782). Additionally, plaintiff suffered from multiple severe physical impairments, primarily spinal conditions due to scoliosis and obesity. (AR at 425, 481, 563). Plaintiff's treating physician stated that due to these severe impairments, plaintiff was limited to sedentary to light work. (AR at 675-79). The ALJ likewise concluded that plaintiff sustained residual functional capacity to perform light work. (AR at 575). A limitation to sedentary to light work fulfills the severe functional limitation of the second prong of 12.05 C. *Fanning v. Bowen*, 827 F.2d at 633. Plaintiff contends therefore that she meets the requirements of 12.05 C and is presumptively disabled.

The ALJ held that plaintiff did not meet the requirements for the listing because the ALJ found that the plaintiff's IQ results were invalid. (AR at 575). The ALJ cited to three reasons to support his findings. First, the ALJ based this finding on the testimony of a non-examining psychologist at the hearing, who opined that plaintiff's IQ scores were invalid and unreliable. (AR at 575, 839). Secondly, the ALJ relied on plaintiff's MMPI results, which indicated that plaintiff was malingering. (AR at 575). Finally, the ALJ discredited plaintiff's IQ scores as invalid because he found that plaintiff's activities were inconsistent with the level of impairment suggested by the IQ scores. (AR at 575). However, these reasons do not constitute sufficient evidence; thus, the ALJ erred by finding plaintiff's IQ scores invalid.

1      The ALJ erred by placing greater weight on the non-examining

2 psychologist's opinion because that opinion was inconsistent with the examining

3 psychologist's opinion. (AR at 575). More weight is generally given to the

4 examining psychologist because he had the opportunity to personally see

5 plaintiff, administer tests, and reconcile the test results with plaintiff's

6 appearance and demeanor. (AR at 782-86); *see Magallanes*, 881 F.2d at 751; 20

7 C.F.R. § 404.1527(d). The examining psychologist concluded that plaintiff was

8 in the "borderline to below average range of intellectual functioning." (AR at

9 784). Moreover, the examining physician found that plaintiff's IQ scores

10 "[appeared] to be an accurate assessment of the claimant's current level of

11 functioning." (AR at 785).

12

13      In contrast, the non-examining psychologist found that plaintiff did not

14 meet any listing "based on this record" and without personally examining

15 plaintiff. (AR at 841). Moreover, the non-examining psychologist did not

16 explain why his conclusion based on the test results differed from the examining

17 psychologist's conclusion. (AR at 849-51). He suggested that the examining

18 psychologist was incompetent; however there is no evidence in the record to

19 suggest this is true, and neither party cited fault with the examining

20 psychologist's conclusions. (AR at 849). The non-examining psychologist

21 admitted that two psychologists could make different conclusions of plaintiff's

22 mental capacity based solely on these test scores. (AR at 851). Finally, the ALJ

23 did not discuss the examining psychologist's findings at all, nor did he cite

24 reasons to discredit these findings. (AR at 558-84). Thus, because the non-

25 examining psychologist's opinion conflicted with the examining psychologist's

26 opinion, and because the ALJ did not cite reasons to discredit the examining

27 psychologist's opinion, the ALJ erred by giving greater weight to the non-

28 examining psychologist's opinion.

1    Moreover, the non-examining psychologist's opinion conflicted with

2 evidence in the record, and thus should not have been given great weight.

3 Although the non-examining psychologist opined that plaintiff's MMPI results

4 strongly indicated that plaintiff was a malingerer, there is little evidence in the

5 record to support that finding.  (AR at 124, 137, 782-86, 855).  First, plaintiff

6 took the RAY-II test, which is used to screen out gross malingerers.  (AR at 785,

7 845).  Plaintiff passed this test, indicating she was not a gross malingerer.  (AR at

8 845).  Moreover, there is no strong evidence anywhere else in the record that

9 plaintiff was malingering.  (AR at 855).  None of her treating physicians

10 suspected plaintiff of malingering, and plaintiff's own activities were consistent

11 with low to borderline intellectual functioning.  (AR at 78, 114, 124, 137).  The

12 record shows that plaintiff attended special education, received average to poor

13 grades, and did not graduate from high school; all of these activities are

14 consistent with low to borderline intellectual functioning.  (AR at 78, 114, 124,

15 137, 812).  Because the non-examining psychologist's opinion was not supported

16 by evidence in the record, the ALJ erred in relying upon it.

17

18    Furthermore, the ALJ erred in relying on the non-examining

psychologist's opinion because it was conclusory and unsubstantiated.  (AR at

19

844-54).  The non-examining psychologist did not give a clear reason why the

20

MMPI would discredit plaintiff's IQ scores.  (AR at 844-54).  At most, the

21

malingering score from the MMPI "casts doubt on whether or not [plaintiff's]

22

effort [on the IQ test] was full and thorough."  (AR at 854).  However, this does

23

not explain why the IQ scores should be completely invalidated.  Moreover, the

24

non-examining psychologist did not proffer a medical opinion about plaintiff's

25

mental state.  (AR at 844-854).  In fact, he admitted that plaintiff's IQ scores

26

could be an accurate and valid representation of her mental state.  (AR at 850).

27

At no time did the non-examining psychologist proffer an opinion that

28

contradicted the examining psychologist's assessment of plaintiff's IQ and mental capacity.  (AR at 844-854).  Because the non-examining psychologist's opinion was conclusory and unsubstantiated, the ALJ erred in giving this opinion greater weight.

In addition to the non-examining psychologist's opinion, the ALJ relied on the MMPI results to discredit plaintiff's IQ scores.  (AR at 575).  Other Circuits have held that the ALJ may use MMPI results that indicate malingering to discredit IQ scores.  *Popp*, 779 F.2d at 1498-1500; *Soto*, 795 F.2d at 222. However, the ALJ may only discredit IQ scores based on MMPI results when there is also substantial evidence that a claimant's daily activities are inconsistent with the level of impairment claimed.  *Clay*, 417 F.3d at 929; *Popp*, 779 F.2d at 1498-1500.  Moreover, in cases in which other Circuits have allowed the MMPI scores to invalidate IQ scores, there has been substantial evidence in a claimant's daily activities to show that the IQ scores were invalid.  *Popp*, 779 F.2d at 1498-1500.  For example, in *Popp*, the ALJ discredited an IQ score that would otherwise meet the listing requirements based on a high MMPI score and other factors.  *Id*.  In *Popp*, the claimant was currently attending his third year of college, had received an associate degree, had previously taught algebra, as well as engaged in work that involved an advanced level of technical knowledge.  *Id*. at 1498.  These activities were highly inconsistent with the degree of mental retardation alleged by the claimant.  *Id*.  Moreover, in *Popp*, the plaintiff failed to show that his lowered IQ was permanent, or that it lasted for a continuous period of twelve months.  *Id*. at 1498-1500.

In contrast, plaintiff's activities have been consistent with her low to borderline intellectual functioning; thus, the ALJ erred in relying on the MMPI test to discredit the IQ results.  Plaintiff has never had substantial gainful employment, has not been able to graduate high school, has attended special

education classes, and has done poor to average in the classes she attended. (AR at 78, 114, 124, 137, 812). Her activities therefore do not constitute substantial discrepancies that would invalidate her IQ scores. Moreover, plaintiff's activities that are consistent with her low intellectual functioning have lasted for a continuous period well over twelve months. (AR at 78, 114, 124, 137, 812). Thus, the ALJ erred by invalidating the IQ results because plaintiff's activities were not inconsistent with the degree of mental impairment claimed.

Plaintiff has shown substantial evidence that indicates she meets listing 12.05 C for disability. Plaintiff has demonstrated a prolonged history of low to borderline intellectual functioning in addition to severe physical functional limitations. (AR at 78, 114, 124, 137, 425, 481, 563, 812). Benefits should be awarded from the time of the onset date of plaintiff's impairments. *See Vertigan*, 260 F.3d at 1053. In this case, because plaintiff is determined to have met the listing 12.05 C due to a combination of a low IQ and a physical limitation, benefits should be awarded from that period. Here, although plaintiff's physical limitations were well established, her IQ was established on the date of her IQ test, December 8, 2005. (AR at 782).

However, the Court cannot determine whether plaintiff met the disability standards of listing 112.05 D for childhood disability benefits. The case is remanded to determine the precise onset date for plaintiff's disability under listing 112.05 D. A claimant is entitled to childhood benefits when the disabling impairment began before the claimant reached the age of 22. 20 CFR § 404.350. In this case, plaintiff demonstrated that her IQ met the requirements for a listing at age 21, thus she qualifies for benefits at least as of that date. (AR at 782). However, it is unclear based on this record the precise onset date of plaintiff's mental impairment, because plaintiff did not take an IQ test, nor did she receive a mental assessment before the age of 18. (AR at 92-93). It is possible to

1 retroactively determine an onset date; however, it requires sufficient supporting
2 medical evidence. *See DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).
3 When the medical evidence does not indicate a definite onset date, and
4 determination of the onset date requires medical inferences, SSR 83-20 requires
5 an ALJ to retain a medical advisor to make the determination. *Id*. Lay evidence
6 may also be used to supplement medical evidence. *Id*.

### III. ORDER

9 For the foregoing reasons, the decision of the Commissioner is reversed.
10 There is sufficient evidence in the record to demonstrate that plaintiff's IQ scores
11 are an accurate assessment of her mental capacity. Moreover, because her IQ
12 scores and her physical impairments meet the requirements of listing 12.05 C,
13 plaintiff is presumptively disabled. Benefits shall be awarded retroactively from
14 the onset date. The matter is remanded in order to further develop the record
15 regarding whether the onset date of plaintiff's mental impairment was prior to
16 age 21, in accordance with the decision, pursuant to Sentence Four of 42 U.S.C.
17 § 405(g).

DATED: August 6, 2008

/ s /
_____

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE